Filed 7/17/14  P. v. Rodriguez CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F066666 |
| v. | (Super. Ct. No. 12CM2659) |
| MANUEL DEJESUS RODRIGUEZ, | **O P I N I O N** |
| Defendant and Appellant. | |

-ooOoo-

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kings County.  Thomas DeSantos, Judge.

Eloy I. Trujillo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

\*       Before Levy, Acting P.J., Gomes, J., and Detjen, J.

A jury convicted appellant, Manuel Dejesus Rodriguez, of individual counts of infliction of corporal injury upon a cohabitant (Pen. Code, § 273.5, subd. (a);[1] count 2), false imprisonment (§ 236; count 3) and making criminal threats (§ 422; count 7), and two counts of assault with a firearm (§ 245, subd. (a)(2); counts 4, 8).  The jury also found true enhancement allegations that in committing the count 2, 3, 4 and 8 offenses, appellant personally used a firearm within the meaning of section 12022.5, subd. (a).  The court imposed an aggregate prison term of 19 years consisting of the following:  on count 2, the four-year upper term plus 10 years for the accompanying firearm use enhancement; on count 3, eight months on the substantive offense plus 16 months on the accompanying enhancement; on count 7, eight months; and on count 8, one year on the substantive offense plus one year four months on the accompanying enhancement.  On count 4, the court imposed, and stayed pursuant to section 654, the four-year upper term on the substantive offense plus 10 years on the enhancement.

On appeal, appellant contends the imposition of consecutive sentences on counts 3 (false imprisonment), 7 (criminal threats) and 8 (assault with a firearm) violated the section 654 proscription against multiple punishment.  We reject appellant's challenges to the terms imposed on counts 7 and 8, agree with appellant that section 654 bars imposition of sentence on count 3, modify the judgment accordingly, and affirm the judgment as modified.

## FACTS

Veronica Rios met appellant in 2011, and at some point thereafter appellant moved into Rios's apartment where she lived with her two children.[2]  Appellant was

---

[1]    All statutory references are to the Penal Code.

[2]    Our factual summary is taken from Rios's testimony.

2

"with" Rios, but he "would go and come back," leaving for one or two days before returning again.

On July 23, 2012, at approximately 2:00 or 3:00 a.m., while Rios and appellant were in the living room of her apartment, appellant began "checking [Rios's] phone" and asking her "who [she] was talking to[.]" Appellant got very angry and when Rios went into the bedroom she shared with appellant, appellant came in, told her she had to tell him who she had been talking to, and pulled out a gun that he had in the waist area of his pants. Rios was sitting on the floor. As appellant continued to demand Rios tell him who she had been talking to, he pointed the gun at her neck, mouth, forehead and stomach. He also put the gun in her mouth, touched her stomach and forehead with the gun and, with a twisting motion, pressed the gun into her neck. At some point, with the gun in one hand he struck her in the head with his other hand, and at some point thereafter he kicked her two or three times in the stomach.

Appellant told Rios that "if [she] left he already knew who he could pay to do something to [her]." He also said "if [she] left he knew who he was going to get to do something." Rios understood the latter statement as a threat to hurt her children. Although appellant did not "exactly" say he would harm her children, Rios "understood [him to mean] something like that."

After appellant kicked Rios in the stomach, he went into the kitchen, but before leaving the bedroom he told Rios to take her clothes off. Thereafter, Rios wrapped herself in a towel, left the bedroom and began walking in the direction of the living room to get her phone. Appellant, however, came out of the kitchen and, holding a gun or a knife—Rios could not recall which—pushed her back into the bedroom and "threw [her] on the bed."

While in the kitchen, appellant had acquired a "kitchen knife," which he pointed at Rios's vagina, touching her skin with the knife, as Rios, the towel having come

3

unwrapped, lay naked on the bed. As he pointed the knife at Rios, he told her she "was going to see what happens to women who are with other men." At some point thereafter he put the gun on a night stand close to the bed, tossed the knife away, and the two had sexual intercourse. Rios had sex with appellant because she was "afraid he would get the gun again or something."

Rios did not attempt to leave the apartment during the night because her children were in the apartment. The next morning, Rios was getting ready to go to work and was drinking coffee when appellant came into the kitchen and asked her why she was "sad." Rios responded that he knew the answer to that question, and appellant said "he didn't want [Rios] to tell anyone" "because he had other people [and] that even if he wasn't there he would harm [Rios] or [her] family."

## DISCUSSION

Appellant contends section 654 precludes imposition of sentence on each of counts 3, 7 and 8 because each of those offenses was committed as part of a "continuous course of domestic violence against a single victim."

### *Legal Background*

Section 654, subdivision (a) provides, in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." However, although under the plain language of the statute multiple punishment may not be imposed for a single "act or omission" (§ 654, subd. (a)), "[c]ase law has expanded the meaning of section 654 to apply to more than one criminal act when there was a course of conduct that violates more than one statute but nevertheless constitutes an indivisible transaction." (*People v. Hairston* (2009) 174 Cal.App.4th 231, 240.)

Whether a course of conduct consisting of multiple acts constitutes an indivisible transaction depends on the "defendant's intent and objective ...." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)  "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*Ibid*.)  On the other hand, "[i]f [the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

Our Supreme Court has "often said that the purpose of section 654 'is to insure that a defendant's punishment will be commensurate with his culpability'" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211 (*Latimer*)), and "decisions ... have refined and limited application of the 'one intent and objective' test, in part because of concerns that the test often defeats its own purpose because it does not necessarily ensure that a defendant's punishment will be commensurate with his culpability." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253 (*Kwok*)).  Thus, as our Supreme Court noted in *Latimer*, cases decided since the intent-and-objective rule was announced in *Neal v. State of California* (1960) 55 Cal.2d 11 have "limited the rule's application in various ways," including, in some cases, by "narrowly interpret[ing] the length of time the defendant had a specific objective, and thereby found similar but consecutive objectives permitting multiple punishment." (*Latimer*, at pp. 1211-1212.)  These cases include *People v. Louie* (2012) 203 Cal.App.4th 388, where the court rejected a section 654-based challenge to the imposition of sentence on multiple offenses, stating:  "[W]here a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective.  [Citation.]  If the separation in time afforded defendants an opportunity to

5

reflect and to renew their intent before committing the next crime, a new and separate crime is committed." (*People v. Louie*, *supra*, at p. 399.)

"A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*People v. Brents* (2012) 53 Cal.4th 599, 618.) "We review the trial court's findings 'in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' [Citation.]" (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085.)

### *Count 3 – False Imprisonment*

As indicated above, appellant contends the acts underlying his false imprisonment conviction were part and parcel of the same conduct underlying his count 2 conviction of infliction of corporal injury upon a cohabitant. He bases this contention, in turn, on the claim that he committed the acts underlying his false imprisonment conviction during the initial episode in the bedroom—before he left the room and went to the kitchen—during which he assaulted Rios.

The court, however, made an express finding that appellant committed the acts underlying the false imprisonment conviction during the *second* episode in the bedroom, and that appellant could be sentenced consecutively for this "separate act." The People agree, asserting that "The trial court can base its section 654 decision on any of the facts adduced [at] trial ...." Thus, the People argue, appellant committed the offense of false imprisonment after he "had had the opportunity to reflect and renew his intent after the commission of count two," and therefore imposition of sentence on both counts 2 and 3 was not barred by section 654.

Appellant bases his argument that the relevant acts of false imprisonment, for section 654 purposes, occurred not during the second episode in the bedroom, but in the first, on the fact that, at trial, the prosecution's theory of appellant's guilt, as presented by

6

the prosecutor in closing argument, was that the false imprisonment occurred during the first episode.[3] In our view, appellant is correct.

*People v. Siko* (1988) 45 Cal.3d 820 (*Siko*) is instructive. The issue in that case was whether the defendant was properly subjected to separate punishment for a lewd and lascivious conduct conviction based on a single incident that also provided the basis for his convictions of forcible rape and sodomy. In arguing that multiple punishment did not run afoul of section 654, the People pointed to evidence purporting to demonstrate that the defendant committed lewd acts other than the rape and sodomy. Our Supreme Court rejected this claim and found that the sentence had to be stayed in accordance with section 654, reasoning that "[t]here is no showing that the lewd-conduct count was understood in this fashion at trial. Indeed, a review of the record demonstrates the contrary." (*Siko*, at p. 826.) The court noted that "the charging instrument and the verdict both identify the lewd conduct as consisting of the rape and the sodomy rather than any other act. Nor did anything in the prosecutor's closing argument or in the court's instructions suggest any different emphasis." (*Ibid.*)

Similarly, in *People v. Bradley* (2003) 111 Cal.App.4th 765, 770 (*Bradley*), the defendant was found guilty of robbery and attempted murder. The latter conviction was based on the prosecution's theory that the defendant was guilty as an aider and abettor in that the crime was a natural and probable consequence of the robbery. In concluding that multiple punishment was barred under section 654, the court reasoned: "In this case, the jury could have been offered the opportunity to find appellant indeed entertained a specific intent to attempt the robbery victim's murder. But presumably recognizing this

---

[3]    The prosecutor argued: "Holding a gun to someone, putting it to their neck, to their head, forehead, stomach, that's menace. That's violent. You've got the violence, and he's kicking and he's hitting her. That's Count 3. That will be false imprisonment, true finding on the gun, if you find he did personally use that gun, which he did."

was not a viable option, the prosecutor elected not to submit that possibility to the jury. So the jurors obviously made no such finding. Instead the jurors predicated appellant's guilt of the attempted murder count solely on the theory the prosecution tendered, a theory only requiring appellant to entertain a single objective—to rob that victim. [¶] In our view, the trial court cannot countermand the jury and make the contrary finding appellant in fact *personally* had both objectives." (*Bradley*, at p. 770.)

In *People v. McCoy* (2012) 208 Cal.App.4th 1333, upon which the People rely, the court summarized the applicable rule as follows: "[A] trial court may base its decision under section 654 on *any* of the facts that are in evidence at trial, without regard to the verdicts," but only "in the absence of some circumstance 'foreclosing' its sentencing discretion (as in *Siko* and *Bradley*) …." (*Id.* at p. 1340.)

Here, given the prosecutor's closing argument, and the absence of any contrary indications in the record, it is evident it was understood by the jury that the charge of false imprisonment was based on appellant's conduct during the first episode in the bedroom. As in *Bradley*, the sentencing court "cannot countermand the jury and make the contrary finding …." (*Bradley*, *supra*, 111 Cal.App.4th at p. 770.) Here, the court did exactly that, accepting the prosecutor's argument and finding that appellant's conduct during the second bedroom episode constituted a "separate act" for which the sentence "should run consecutively." And as the People do not dispute, the acts that constituted the false imprisonment in the first episode were the same acts as those underlying the count 2 conviction of infliction of corporal injury on a cohabitant.[4] Therefore, imposition of sentence on the count 3 false imprisonment and the accompanying firearm use enhancement violated section 654. Under these circumstances, the proper appellate response is to "'stay the sentence on the lesser offenses while permitting execution of the

---

**4**     See footnote 3, *ante*, page 7.

greater offense consistent with the intent of the sentencing court.'" (*People v. Pitts* (1990) 223 Cal.App.3d 1547, 1560.) Accordingly, we will stay execution of sentence on count 3 and the accompanying enhancement.

### *Count 7 – Criminal Threats*

As indicated above, Rios testified she understood appellant's threats to be directed at both her and her children. In closing argument, the prosecutor argued, "Count 7 is [section] 422 criminal threats…. [T]his is the threatening to kill her. This is the threatening to hurt her kids." The court found: "Count 7 is a separate act and just as egregious [as the count 3 false imprisonment]. Threatening children is … despicable conduct, this Court feels, to get someone to do their wishes. Again, this should run consecutively …."

As best we can determine, appellant argues that the court found appellant threatened to harm Rios's children, but that the evidence does not support this finding. The evidence, appellant contends, supports the finding that appellant threatened Rios *only*. And because the evidence thus shows the threat was made "during the first act of domestic violence to a *single victim*" (italics added), appellant argues further, imposition of sentence on count 7 violated section 654. We disagree.

First, we reject appellant's reading of the court's remarks as a finding that appellant's threat was directed at Rios's children but not at Rios. Although the court made reference only to appellant "threatening [to hurt Rios's] children," Rios testified she understood the threats to be directed at both her and her children, and the prosecutor argued that appellant threatened both Rios and her children. Nothing in the court's remarks preclude a finding, and we interpret the court's remarks, as including an implied

9

finding that appellant threatened to harm Rios as well as her children during the first episode in the bedroom.[5]

Further, we reject appellant's contention that section 654 precludes sentence on count 7 because that offense "related to the continuous course of domestic violence against a single victim." The court reasonably could have found (1) that appellant committed multiple volitional acts during the first episode in the bedroom, some of which—such as striking Rios—formed the basis of appellant's conviction of infliction of corporal injury upon Rios, and some of which—such as appellant's statement to Rios that he "knew who he could pay to do something to [her]"—constituted criminal threats in violation of section 422, and (2) that between these acts appellant had time to reflect. (Cf. *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [section 654 did not preclude punishment for two assault counts based on two gunshots fired within one minute of each other].) Therefore, section 654 did not bar the imposition of a consecutive term on count 7.

### Count 8 – Assault With a Firearm

The court found as follows: "After entering the bedroom the second time, defendant forced the victim onto the bed showing the victim the firearm again as alleged in Count 8. This is also a separate act and should run consecutively."

Appellant argues that the evidence shows that in committing all the offenses in the instant case, including the count 8 offense—the assault with a firearm during the second episode in the bedroom—he acted with a "single objective and intent," viz., "domestic

---

5    Section 422 refers to threats that cause the person to whom the threat is communicated "to be in sustained fear for his or her own safety or for his or her immediate family's safety …." (§ 422, subd. (a)). We assume without deciding that, as appellant argues, the evidence was insufficient to establish Rios was placed in sustained fear for her children's safety.

violence." Therefore, he argues, imposition of sentence on count 8 violated section 654. We disagree.

As with appellant's criminal threats, the count 8 assault was one of a series of volitional acts, separated by time, giving appellant time to reflect. Thus, however the intent and objective for such acts is characterized, section 654 does not bar punishment on count 8. Therefore, the court did not err in imposing a consecutive sentence on that count.

## DISPOSITION

Appellant's sentence is modified to stay the term of imprisonment on his conviction of false imprisonment and the accompanying firearm use enhancement, the stay to become permanent upon appellant's completion of the sentence imposed on his conviction of infliction of corporal injury on a cohabitant. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting this modification and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.